UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREL BROWN OXLEY, | Case No. EDCV 16-01866 (JDE) |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

# I.

# INTRODUCTION

On August 31, 2016, Plaintiff Laura Brown Oxley ("Plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). (Dkt. No. 1.) The parties filed Consents to proceed before the undersigned Magistrate Judge on March 3, 2017 and March 6, 2017. (Dkt. Nos. 11, 12, 18, 19.) On March 10, 2017, the parties filed a Joint

---

[1] Nancy A Berryhill is now Acting Commissioner of Social Security ("Commissioner" or "Defendant") and is substituted in as defendant. See 42 U.S.C. 205(g).

1

Stipulation ("Jt. Stip.") that addresses their positions concerning disputed issues in the case (Dkt. 17) and the Court now rules based upon the Complaint, the Joint Stipulation and the Administrative Record ("AR") as set forth in the Case Management Order (Dkt. 9).

## II.

## ADMINISTRATIVE PROCEEDINGS AND BACKGROUND

Plaintiff was born on May 10, 1957. (Administrative Record, Volume 1 ("1AR") 944.) On May 19, 2008, Plaintiff filed an application for disability benefits, alleging a disability beginning May 26, 2007, after she suffered a stroke. (1AR 199-201, 202-05.) After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("first ALJ") on December 5, 2008. (1AR 76-79, 85-89, 90-91.) The first ALJ held a hearing on October 28, 2010. (1AR 41.) On November 19, 2010, the first ALJ issued a decision concluding Plaintiff was not under a disability. (1AR 38-52.)

The Appeals Council granted Plaintiff's request for review and remanded the matter on May 11, 2012, after which a second ALJ concluded Plaintiff was not under a disability. (1AR 53-54, 56-75.) On May 19, 2014, Plaintiff filed a Complaint with the Court challenging the Commissioner's decision denying her application for disability benefits. (2AR 976-82.) On May 29, 2015, the prior magistrate judge remanded the matter for further administrative proceedings finding, *inter alia*, that the ALJ's adverse credibility determination was inadequately supported because: (1) "the [ALJ] did not identify *which* [of the Plaintiff's] daily activities contradicted which testimony"; and (2) "the [ALJ] failed to explain *what* objective medical evidence detracted from the severity of Plaintiff's symptoms." (2AR 967-68.)

On May 17, 2016, a third ALJ conducted the remand hearing on April 7, 2016, again denying benefits. (2AR 917-36.) This action followed.

# III.

# SUMMARY OF THE ADMINISTRATIVE DECISION

The ALJ calculated that Plaintiff met the special earnings requirements for a period of disability and disability insurance benefits through December 31, 2012. (2AR 922.) The ALJ then used the five-step sequential evaluation process to guide his decision. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 24, 2007.[2] (2AR 923.) At step two, the ALJ concluded that Plaintiff has the severe impairments of status post ischemic stroke and cognitive disorder. (2AR 923.) At step three, the ALJ decided that the impairment did not meet or equal any "listed impairment." (2AR 924.) The ALJ further found that, through her date last insured, Plaintiff retained the residual functional capacity ("RFC")[3] to perform the demands of a full range of work at all exertional levels, but with the following non-exertional limits:

> The claimant can perform unskilled, simple tasks. She is precluded from fast-paced work (such as on an assembly line or fast food work at the lunch hour), and no repetitive, complex, or extended reading, writing, or mathematical calculations.

(2AR 924.)

At step four, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff is unable to perform any of her past relevant work as a personnel clerk. (2AR 928.)

---

[2] The Court notes that this date appears to be in error. Throughout the Administrative Record, the onset date is identified as May 26, 2007.

[3] RFC is what a claimant can still do despite existing exertional and non-exertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assess the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

The ALJ classified Plaintiff as an individual closely approaching advanced age, on the date last insured, noting that Plaintiff subsequently changed age category to advanced age. (2AR 928.) At step five, based on Plaintiff's RFC vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform, including work as a "linen room attendant" (Dictionary of Occupational Titles ("DOT") No. 222.387-030), "marker" (DOT No. 369.687-026), and "day worker" (DOT No. 301.687-014). (2AR 929-30.) Accordingly, the ALJ determined that Plaintiff was not disabled during the relevant period from May 26, 2007 and the date last insured of December 31, 2012. (2AR 930.)

## IV.
## STANDARD OF REVIEW

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of no less than twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). In assessing disability claims, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing, *inter alia*, 20 C.F.R. §§ 404.1520(a), 416.920(a)). First, the ALJ considers whether the claimant is currently working in substantial gainful activity. Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any one of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404,

4

Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015).

If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step, the ALJ assesses the claimant's RFC. 20 C.F.R. § 416.920(d), 416.945; Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ determines at the fourth step whether the claimant has the RFC to perform past relevant work, either as she actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 416.920(f). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. 20 C.F.R. § 416.920(g); Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. Tackett, 180 F.3d at 1099.

The claimant generally bears the burden at each of steps one through four to show that she is disabled or that she meets the requirements to proceed to the next step, and the claimant bears the ultimate burden to show that she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at step five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See 20 C.F.R. §§ 404.1560(c)(1)-(2), 416.960(c)(1)-(2); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision denying benefits to determine whether it is free from legal error and supported by

substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

Although courts will not substitute their discretion for the Commissioner's, courts nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina, 674 F.3d at 1110; see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (court will uphold decision when evidence is susceptible to more than one rational interpretation). However, a court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

Lastly, even when legal error is found, the reviewing court will still uphold the decision if the error was harmless, that is, where it is inconsequential to the ultimate non-disability determination, or where, despite the error, the Commissioner's path "may reasonably be discerned," even if the Commissioner explains her decision "with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal punctuation omitted).

# V.

# DISCUSSION

**A.  Dr. Fogel's Opinion**

    1.    Disputed Issue

Whether the ALJ adequately considered the opinion of Travis Fogel, Ph.D., ("Dr. Fogel"). (Jt. Stip. at 5-16.)

    2.    Arguments of the Parties

The ALJ rejected Dr. Fogel's disability statement "indicating that claimant was unable to work, but [gave] great weight to the findings from Dr. Fogel's examinations." (2AR at 927.) The ALJ provided two reasons for rejecting Dr. Fogel's opinion: (1) "Dr. Fogel focused on [Plaintiff's] subjective complaints, which were not consistent with the medical record"; and (2) "Dr. Fogel's opinion did not preclude the [Plaintiff] from other unskilled work." (2AR at 927.)

Plaintiff argues that the ALJ improperly discounted Dr. Fogel's disability opinion. (Jt. Stip. at 7.) Plaintiff contends that the ALJ's assertion that Dr. Fogel relied more heavily on Plaintiff's subjective statements, as opposed to his own clinical findings, is false and unsupported by the results of Dr. Fogel's examination. (Jt. Stip. at 15.) Plaintiff further argues that Dr. Fogel's opinion stated that she was not able to perform her ordinary and customary work, nor could he "foresee an employer appreciating her residual, permanent cognitive challenges, let alone providing accommodations for her." (Jt. Stip. at 8; 2AR 786.) Plaintiff argues that these statements support her contention that Dr. Fogel's opinion precludes even unskilled work. (Jt. Stip. 8, 16.)

Defendant argues that the ALJ rejected Dr. Fogel's opinion because his ultimate opinion that Plaintiff had a disability was inconsistent with: other medical and non-medical evidence in the record; Plaintiff's activities of daily living; and Dr. Fogel's own examination of Plaintiff. (Jt. Stip. at 14; 2AR 927.) Defendant

7

further contends that the ALJ's interpretations of Dr. Fogel's findings are consistent with the determination that Plaintiff can perform unskilled work. (Jt. Stip. at 13.) Defendant points to Dr. Fogel's statement that the Plaintiff was unable to "perform her usual and customary work" as demonstrating Plaintiff was precluded from performing her previous work but not all work, generally, which is why the ALJ's final determination was that Plaintiff could perform unskilled work that did not involve the cognitive weaknesses identified by Dr. Fogel. (Jt. Stip. at 13-14)

### 3. Applicable Law

Social Security regulations require the ALJ to consider all relevant medical evidence when determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(e), 404.1527(c), 416.927(c). Where the Commissioner finds that the treating physician's opinion about the nature and severity of the claimant's impairments is well-supported by accepted medical techniques and is not inconsistent with the other substantive evidence in the record, that opinion is ordinarily controlling. 20 C.F.R. § 404.1527(c)(2); Orn, 495 F.3d at 631.

Nevertheless, the ALJ is also "responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch, 400 F.3d at 679). An ALJ need not address every piece

of evidence in the record, but only evidence that is significant or probative. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2006).

In deciding how to resolve conflicts between medical opinions, the ALJ must consider that there are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended on April 9, 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830.

"The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and whether it is consistent with other evidence in the record. See 20 C.F.R. § 404.1527. "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Andrews, 53 F.3d at 1041 (citing Magallanes, 881 F.2d at 751). To reject the uncontroverted opinion of Plaintiff's physician, the ALJ must present clear and convincing reasons for doing so. Andrews, 53 F.3d at 1041. Where, as here, the treating physician's opinion is contradicted by other doctors, the Commissioner may reject the opinion by providing "specific and legitimate reasons" for doing so that are supported by substantial evidence in the record. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). If there is "substantial evidence" in the record contradicting the opinion of the treating physician, then the opinion of the treating physician is no longer entitled to controlling weight. Orn, 495 F.3d at 631-32.

9

4. <u>Analysis</u>

Here, the ALJ cited several specific and legitimate reasons supported by the record for giving minimal weight to Dr. Fogel's ultimate opinion on Plaintiff's disability status. For example, the ALJ supported his rejection of Dr. Fogel's opinion by stating the following:

> The undersigned finds Dr. Fogel's opinion did not preclude [Plaintiff] from other unskilled work. Findings from Dr. Fogel's examination support the [RFC] assessed herein for unskilled work. For example, the claimant's speech was unremarkable; higher-level word findings and thought organization were remarkably improved; no evidence of cognitive fatigue; no complaints of physical pain/discomfort; and memory was normal. [Plaintiff] had difficulty with written measures of attention and concentration, and processing speed. Therefore, based on Dr. Fogel's findings, and together with other examinations that showed [Plaintiff] was functioning normally and stable, and [Plaintiff's] admissions that she was able to do daily activities, prepare simple meals, and take care of her financial matters; the undersigned finds the [RFC] assessed herein to be well supported. (2AR at 927.)

As stated above, the ultimate issue of disability is for the ALJ to decide. <u>Magallanes</u>, 881 F.2d at 751. The ALJ reasonably found that Dr. Fogel's opinion—as far as it stated that Plaintiff cannot work in any capacity—was not supported by the medical record, specifically referencing the abilities that Dr. Fogel found the Plaintiff still possessed. (2AR at 927.) Although Dr. Fogel indicated that Plaintiff cannot work (presumably in any capacity),[4] Dr. Fogel separately described Plaintiff's ability to work given certain accommodations,

---

[4] Plaintiff argues that this is in the meaning of Dr. Fogel's statements in the Administrative Record. (Jt. Stip. at 16; 2AR 776.)

10

though he doubted that an employer would provide such accommodations. (2AR at 820.) The ALJ reasonably resolved this ambiguity by finding that Dr. Fogel's opinion did not preclude Plaintiff from performing certain unskilled work. Plaintiff argues that the ALJ did not consider the record as a whole (Jt. Stip. at 15), but the ALJ's references to specific impairments discussed by Dr. Fogel and incorporation of those impairments into Plaintiff's RFC bely Plaintiff's argument.

**B.   Dr. Uffindell's Testimony**

    1.   <u>Disputed Issue</u>

Whether the ALJ adequately considered the opinion of Sarah. H. Uffindell ("Dr. Uffindell"). (Jt. Stip. at 5, 16-22.)

    2.   <u>Contentions of Both Parties</u>

Plaintiff argues that the ALJ improperly rejected Dr. Uffindell's opinion because Plaintiff admitted to undertaking daily activities, socializing with others, and handling money appropriately. (Jt. Stip. at 17.) According to Plaintiff, the ALJ failed to articulate specific and legitimate reasons for rejecting Dr. Uffindell's opinion. (Id. at 18.) Additionally, Plaintiff contends that none of the activities she admitted performing stand in contradiction to the limitations identified by Dr. Uffindell and that the record does not support the ALJ's conclusion that Plaintiff had "essentially recovered" from her stroke. (Id. at 17.)

Defendant asserts that Dr. Uffindell's examination resulted in findings that undermined Plaintiff's testimony. For example, Defendant cites Dr. Uffindell's conclusion that physical impairments would cause Plaintiff to be absent from work and contrasts it with Plaintiff's testimony that there were no residual physical effects from the stroke. (Id. at 18.) Defendant cites examples in the record that controvert Plaintiff's ultimate assertion that she is incapable of performing unskilled work, including findings from Dr. Uffindell's examination showing that Plaintiff showed full muscle strength, no facial droop, intact sensation, and a

normal gait. (Jt. Stip. at 19.)

    3.    <u>Applicable Law</u>

As Dr. Uffindell served as Plaintiff's treating physician (Jt. Stip. at 16), the law applied to the disputed issue relating to Dr. Fogel is used here as well.

    4.    <u>Analysis</u>

An ALJ must consider a treating physician's opinion on the ultimate issue of disability as he would consider a treating physician's medical opinion. <u>Reddick</u>, 157 F.3d at 725; <u>see</u> SSR 96-5p ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."). The ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides specific and legitimate reasons for discounting the opinion. See <u>Lester</u>, 81 F.3d at 830-31 (stating that the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); <u>see also</u> <u>Orn</u>, 495 F.3d at 632-33 ("[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

    The ALJ gave the following reasons for discounting Dr. Uffindell's opinion:
> The undersigned has given little weight to the opinion of the claimant's treating doctor, Dr. Uffindell, who indicated the

[Plaintiff] was significantly impaired; would miss work; and had serious limitations with remembering work like procedures, responding to changes, understanding and remembering detailed instructions, and carrying out detailed instructions. While the undersigned agrees that [Plaintiff] had some limitations regarding complex work and responding to changes, the undersigned disagrees that the [Plaintiff] was significantly impaired and would miss work on a regular basis because of her severe physical impairments. The record as a whole showed the [Plaintiff] had essentially recovered from her stroke and was functioning normally in many areas. [Plaintiff] admitted she was able to take care of daily activities, socialize with others, and handle money appropriately. (2 AR at 928.)

Unlike the ALJ's discussion of Dr. Fogel's opinion, which provided specific examples in the medical record and Plaintiff's testimony that contradicted the opinion that Plaintiff could not perform work, the ALJ's rejection of Dr. Uffindell's opinion is far more conclusory. The ALJ references the medical record as a whole, without offering specifics from the record that are at odds with Dr. Uffindell's contention that Plaintiff would experience certain potentially significant limitations if she were to attempt to return to work.

The fact that Dr. Uffindell's opinion is in the form of a conclusory check-off report (2AR 912-14) would be a legally sufficient reason for the ALJ to reject it. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1995) (remarking that an ALJ "permissibly rejected [evidence] because they were check-off reports that did not contain any explanation of the bases

13

of their conclusions."); see also Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing a preference for individualized medical opinions over check-off reports). However, the ALJ does not state this as a reason for rejecting Dr. Uffindell's opinion.

In its filings in the instant action, Defendant cites a number of specific medical findings from the record to support the conclusion that Dr. Uffindell's opinion was inconsistent with the weight of the medical record. (See Jt. Stip. at 18-20.) However, the ALJ did not cite to any specific instances from the medical record to support his decision to give little weight to Dr. Uffindell's opinion.

The Court is limited to review the reasons that the ALJ asserts, not the reasons that the ALJ could have given. Connett, 340 F.3d at 874 ("We are constrained to review the reasons the ALJ asserts."); Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001) ("we cannot affirm the decision of any agency on a ground that the agency did not invoke in making its decision") (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

Because the ALJ did not assert specific facts or reasons to discount Dr. Uffindell's opinion, we must reverse the decision of the Commissioner and remand for further administrative action.

**C.  Plaintiff's Subjective Symptom Testimony**

1.  Disputed Issue

Whether the ALJ properly considered Ms. Oxley's pain and symptom testimony during his assessment. (Jt. Stip. at 22-31.)

2.  Contentions of Both Parties

Plaintiff argues that the ALJ improperly discounted her subjective testimony by concluding that the Plaintiff was "stable and essentially recovered from the

stroke in most functional matters." (Jt. Stip. at 23; 2AR 925.) Plaintiff also asserts that the ALJ impermissibly rejected her pain and symptom testimony based on her ability to perform daily activities, such as being able to prepare meals, handle financial matters, and drive. (Jt. Stip. at 23, 25.)

Plaintiff contends that her ability to perform certain daily activities slowly does not preclude a finding of a disability as "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987).

Defendant posits that the ALJ found, and highlighted, inconsistencies between Plaintiff's allegations of disabling symptoms and her admitted abilities. (Jt. Stip. at 26.) Defendant cites Plaintiff's testimony at the ALJ hearing in 2012 where she described her ability to drive, tidy-up, clean, do chores, engage in bible study, prepare meals, do laundry, and perform self-care. (Jt. Stip. at 27.) Defendant argues that such activities are not consistent with allegations of disability. (Id., citing Rollins, 261 F.3d at 857 ("The ALJ [] pointed out ways in which [the claimant's] claim to have totally disabling pain was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week, and so forth."). Defendant further argues that Plaintiff's allegations are contrary to the medical record. (Jt. Stip. at 28.)

   3.   Applicable Law

The determination of credibility and the resolution of conflicts in the testimony are functions reserved to the ALJ. Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 599 (9th Cir. 1999); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). In general, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("An ALJ cannot be required to believe every

15

allegation of disabling pain, or else disability benefits would be available for the asking.").

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter, 504 F.3d at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

When analyzing a claimant's subjective symptoms of pain, the ALJ may consider factors relevant to the symptoms such as, *inter alia*, the claimant's daily activities; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment, other than medication, that the claimant receives or has received for relief of pain or other symptoms; or any other measures that the claimant has used to relieve pain or symptoms. See 20 C.F.R. § 404.1529. The ALJ may employ "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms, testimony that appears less than candid, or an unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, in assessing a claimant's credibility. See Tommasetti, 533 F.3d at 1039 (citations omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

### 4. Analysis

The ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however the [Plaintiff's] . . . statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (2AR 926.)

"The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence." Tackett, 180 F.3d at 1102. In rejecting Plaintiff's subjective statements related to her symptoms, the ALJ relied on the medical record extensively in addition to highlighting the contradictory statements made by Plaintiff related to her daily activities. The ALJ cited a consultative examination which took place in August of 2008 where Dr. Reznick, a licensed psychologist, submitted a report stating that: "[t]he claimant may have experienced some cognitive impairment as a result of her strokes, but any impairment she has experienced does not appear severe enough to significantly limit her functional abilities in a work setting . . ." (2AR 712.) Dr. Reznick's conclusions of ability did not extend to considerations of the Plaintiff's physical limitations. (Id.) The ALJ also cited a consultative examination from the same month, administered by Dr. Sophon, an orthopedic surgeon, which stated that "[t]he claimant does not have significant physical impairment and there is no functional limitation." (2AR 721.) The ALJ also referred to a neurological examination that took place about two months following Plaintiff's stroke in which, Dr. Lim, a neurologist, stated that Plaintiff was "fully alert, awake, and oriented. Responses to questions were good and appropriate. Language function was normal. Speech normal. I can understand her very well, and she can understand me very well." (2AR 697.) The ALJ cited the examination of Dr. Zarsouz, a neurologist, taken in November 2007, which stated that "the patient's

recent and remote memory are normal." (1AR 345.) He also found that Plaintiff's muscle tone, reflexes, sensation, coordination, and gait were also normal. (Id.)

Plaintiff attempts to refute the contentions of Defendant by pointing to the findings made by Dr. Fogel; however, the relative weakness noted by Dr. Fogel during his examination fall squarely within the non-exertional limitations the ALJ placed on Plaintiff's RFC. Dr. Fogel noted that Plaintiff's relative weaknesses included: processing speed; the ability to rapidly alternate or switch mental sets; written arithmetic skills; fine motor speed; and certain aspects of language including the ability to comprehend text, letters, and numbers. (2AR 785) The ALJ, in his assessment of Plaintiff's RFC, stated that Plaintiff could perform unskilled, simple tasks, with non-exertional limitations including: fast-paced work; repetitive or complex work; and work involving reading, writing, or mathematical calculations. (Id. at 924.) Furthermore, Dr. Fogel's examination also includes a statement indicating that Plaintiff could perform work, despite any impairment in cognitive functioning, if she were given the appropriate accommodations. (Id. at 786.) He simply did not believe an employer would appreciate the Plaintiff's challenges, "let alone provid[e] accommodations." (Id.)

The Ninth Circuit has noted that there are "two grounds for using daily activities to form the basis of an adverse credibility determination: Evidence of the daily activities either (1) contradicts the claimant's other testimony, *or* (2) meets the threshold for transferable work skills." Orn, 495 F.3d at 639 (emphasis added). Here, the ALJ noted that Plaintiff's testimony was consistent with the RFC assessed. (2AR 925.) Plaintiff had reported in her Adult Function Report, submitted in 2008, having difficulty with memory, completing tasks, concentration, and following instructions in explaining some of the symptoms of her alleged disability. (2AR 925.) The ALJ noted that Plaintiff had testified that she was able to do daily activities slowly, prepare meals, and handle financial

matters. (Id. at 926.) Further, Plaintiff could drive and indicated she wished to serve as a tour guide or docent. (Id.) In addition, the ALJ highlighted Plaintiff's testimony that she had no physical limitations and motor function was normal. (Id. at 925-26.) The ALJ stated this testimony was consistent with an RFC of non-exertional, unskilled work. (Id.) The Court agrees.

The ALJ stated sufficient specific reasons for not fully crediting Plaintiff's testimony. Beyond the medical evidence, the ALJ listed the many activities in which Plaintiff is engaged on a daily basis, which undermine Plaintiff's contention that she is unable to perform even unskilled work. See Rollins, 261 F.3d at 853 (finding that the ALJ properly assessed the lack of credibility of pain testimony by a claimant by citing the medical record and "daily activities, such as attending to the needs of [] two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week . . ."). The Court finds that the ALJ gave clear and convincing reasons for discounting the Plaintiff's subjective testimony, and those reasons were supported by substantial evidence. Id. The ALJ's findings are also sufficiently specific to permit this Court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Bunnell, 947 F.2d at 345-46. While there may be other reasonable interpretations of Plaintiff's testimony, it is not the role of this Court to second-guess an ALJ's determination supported by substantial evidence. Fair, 885 F.2d at 604.

## VI.
## CONCLUSION AND ORDER

The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in

the decision.  See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985) (per curiam) (as amended).

      This is not an instance where no useful purpose would be served by further administrative proceedings. Rather, this is an instance where additional administrative proceedings could remedy the defects in the ALJ's decision. On remand, the ALJ shall reevaluate Dr. Uffindell's opinion and either credit the opinion as true, or provide specific and legitimate reasons supported by citation to substantial evidence in the record for any portion of the opinion that is rejected. See Lester, 81 F.3d 830-31.

      Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED:   June 15, 2017

                                                 JOHN D. EARLY
                                                 United States Magistrate Judge